44 N.W.2d 208 (1950)
In re WEIDE'S ESTATE.
WEIDE et al.
v.
HINTZ et al.
No. 9107.
Supreme Court of South Dakota.
October 3, 1950.
Frank S. Tait, Milbank, Rex M. Sheild, Salem, for appellants Edna Hintz, Emma. Mielke, Errol Weide and Elmer Weide.
*209 Leo P. Flynn, Milbank, for appellant Elmer Weide, as an Executor of Estate of Adolph Weide, Deceased.
John Carl Mundt, Sioux Falls, for respondent Gladys A. J. Weide, Claimant.
Leo P. Flynn, Milbank, for respondent Elvin Weide, as an Executor of Estate of Adolph Weide, Deceased.
SICKEL, Judge.
Adolph Weide died on December 1st, 1945, at the age of eighty-five, leaving as his heirs five children, namely: Elvin Weide, Emma Mielke, Elmer Weide, Errol Weide and Edna Hintz. On May 27, 1946, Gladys A. J. Weide, wife of the son Elvin Weide, filed a claim against the estate of decedent in the sum of $2,003.00 for care of decedent as a registered nurse during his last illness. On October 7, 1948, claimant presented to her husband, one of the executors of the estate, an amended claim for nursing, housework, laundry and food furnished between the dates of March 11 and December 1, 1945, amounting in all to the sum of $5,087.60. The items are stated in the claim as follows:

 "1. For services as a registered
 nurse from March 21 to December
 1, 1945, amounting to
 544.7 ten hour days, at $8.00
 per day, the reasonable value
 thereof per day, total........... $4357.60
 "2. For housework for a period
 of 24 weeks during the period
 of time from March 11 to
 December 1, 1945 at $10 per
 week, the reasonable value
 thereof per week, total........... 240.00
 "3. For laundry work daily for a
 period of 36 weeks during the
 period of time from March
 21 to December 1, 1945, at
 $10 per week, the reasonable
 value thereof per week, total... 360.00
 "4. For food furnished and prepared
 for a period of 13
 weeks from September 1st to
 December 1st, 1945 (no
 charge being made for room)
 at $10 per week, the reasonable
 value thereof per
 week ............................ 130.00
 ________
 Grand total..................... $5087.60

together with interest from December 1, 1945 at 6% and cost, if any."
This claim was approved by Elvin Weide, husband of claimant, one of the executors, but not by Elmer Weide, the other executor. Objections were filed by interested parties and were heard in the county court. The county judge allowed the claim in part. Thereafter the claimant and the contestants appealed to the circuit court. There the issues of fact were submitted to a jury which returned a verdict for claimant in the amount of $4,717.60. Judgment for the amount of the jury's verdict was entered for claimant and thereafter the contestants appealed to this court.
Appellants contend that the evidence shows the existence of a family relationship between claimant and decedent; that it is therefore presumed that her services were gratuitous, and that she cannot recover on her claim unless the evidence also shows an express contract between the parties; that the evidence is insufficient to prove such a contract. Respondent contends: "Under the instructions of the Court the jury could have found there was no family relationship; or that there was an agreement to pay, or that an agreement to pay the reasonable value for necessary and valuable services rendered is implied."
It is the general rule that whenever services are rendered and voluntarily accepted, a contract of hiring and an obligation to pay compensation is implied in law. However, as between members of a family, a claim for services rendered by one to another is presumed to be gratuitous, and in order to recover compensation therefor the claimant must show, not only the rendition and acceptance of the services, but also that, considering all the circumstances of the case, including the degree of relationship of the parties and the nature of the services, there was an understanding between them that payment was to be made. Such understanding may be established by *210 circumstantial or indirect evidence and it is often characterized by the courts as a contract implied in fact. Such a contract when established, is sufficient to overcome the presumption of gratuity which arises from the family relationship. Murphy v. Murphy, 1 S.D. 316, 47 N.W. 142, 9 L.R.A. 820; Disbrow v. Durand, 54 N.J.L. 343, 24 A. 545, 33 Am.St.Rep. 678; In re Fox's Estate, 131 W.Va. 429, 48 S.E.2d 1, 7 A.L.R. 2d 1, Annotation, 7 A.L.R.2d 8.
A family is a collective body of persons who form one household, under one head and one domestic government. 7 A.L.R.2d 36, Annotation § 14. Whether the family relationship exists is a mixed question of law and fact to be determined from all the circumstances involved. Ibach v. Hoffman, 184 Or. 296, 198 P.2d 266, 270. Adolph Weide's wife died in September 1944, and shortly thereafter all his children met at the Weide home and agreed that each should contribute an equal amount of time and service in caring for him. In January 1945 Weide became dissatisfied with Helen Hanson, who was then his housekeeper, and he expressed a desire that she should be dismissed. He was despondent and felt that his children had neglected him. He wanted one of his own children to come and care for his needs; he was desperate for some one to come. Claimant went to Weide's home about the middle of March 1945 taking her two children aged three and seven with her. Her husband Elvin Weide came on May 12th and spent considerable time with his family there. Claimant also brought a stove and burner, baby crib, her own linen, blankets, towels and dishes. Weide furnished the home, furniture, fuel and telephone. Meals were prepared and served at a family table but Weide was served individually. Almost all of the living expense of Weide and of claimant's family were paid out of Weide's funds. On the other hand claimant came to the Adolph Weide home as a housekeeper to take the place of Helen Hanson who had been dismissed. She did most of the housework for her own family as well as for Adolph Weide, and had almost the entire care of Weide during a period of more than eight months immediately preceding his death. The last three months of such housekeeping and care was in her own home in Sioux Falls. During this period Adolph Weide's health failed both mentally and physically, and he was twice afflicted with pneumonia. He was eighty-five years of age at the time the services of claimant were performed.
Claimant was a daughter-in-law of Adolph Weide. The lack of blood relationship is admissible as a circumstance bearing on the question of family relationship, but it is not conclusive. Hartley v. Bohrer, 52 Idaho 72, 11 P.2d 616; Disbrow v. Durand, 54 N.J.L. 343, 24 A. 545, 33 Am.St.Rep. 678.
Respondent claims that she went to Revillo to keep house and care for Adolph Weide at his request, with the understanding that she was to be paid for her services. The evidence upon which she relies consists in part of a number of letters offered in evidence by her counsel. Appellants objected to the introduction of the letters in evidence and the objections were sustained as to all but Exhibits 18 and 19, which were admitted. Exhibit 18, so admitted, was a letter written by Elvin Weide, husband of claimant, to his sister Edna. Exhibit 19 was a letter also written by Elvin Weide to Elmer Weide, his brother. The court stated that it was admitted because it had bearing on claimant's contention that her services were not gratuitous and the ruling of the circuit court on the objection has been assigned as error by the appellants. All the letters were hearsay, no foundation was laid for their admission, and they were incompetent for any purpose, so far as this case is concerned.
Claimant also refers to a conversation had between Adolph Weide and his son Elvin in the yard at the Weide home in July 1945. Elvin Weide testified that his father told him in that conversation that the lady keeping house and caring for him should be paid. Respondent claims that this was a confirmation of her employment by the decedent. The evidence shows that the infirmities of old age and the effects of disease had at this time so far affected the mind of Adolph Weide that he no longer recognized the claimant, and he was unable *211 to distinguish one of his sons from another. Elvin Weide, the husband of claimant, testified that his father could no longer "weigh values or know what money was at that time". There is no evidence to show that claimant kept house and cared for Adolph Weide at his request, and there is no evidence of an understanding between them that she was to be paid.
Claimant also places great stress upon the fact that she was then and still is a registered nurse, but nowhere in the record is it shown that this fact was ever mentioned or considered by her or Weide, or by any one else, in connection with the care of Adolph Weide by claimant. No doubt some of the services performed by her for Adolph Weide were such as would be ordinarily performed by a registered nurse, but so far as the evidence shows those services were also the kind which would be ordinarily performed by one member of a family for another.
On this record, taken as a whole, the court cannot say, as a matter of law, that the family relationship did or did not exist between claimant and decedent during the period for which she is claiming compensation. The question was therefore one for the jury to decide. If the jury should decide this issue in favor of contestants, claimant cannot recover, because, as already stated, there is no substantial evidence to support claimant's contention that a contract, as herein defined, existed between claimant and decedent. Appellants' requested instructions to this effect were refused, and no equivalent instructions were given.
The jury should also have been instructed that in case they should find that the family relationship did not exist between claimant and decedent during the period that the services were performed, it would then be the duty of the jury to return a verdict for the reasonable value of the services rendered.
Respondent contends that the defense of family relationship was not presented in the county court and that it was improperly raised for the first time at the trial in the circuit court. The evidence on this issue was presented by both sides without objection on behalf of claimant. Claimant proposed the following instruction: "You must first determine whether or not the Claimant, Gladys A. J. Weide, R. N., a daughter-in-law and Adolph Weide her father-in-law were members of the same family because all of the other issues in this case hang upon your determination of this question." It therefore appears from the record that the issue of family relationship was tried in the circuit court by consent of the parties, and it is to be treated in this court as if properly before the circuit court. SDC 33.0914.
Respondent also applied to the circuit court for an order striking the transcript from the settled record on the ground that it was not served with the assignments of error within ten days after the transcript was received from the reporter, as required by SDC 33.0736. The motion was denied in the circuit court and the record as certified includes the transcript. Respondent has applied to this court for a similar order. The statute referred to above provides: "The transcript and assignments of error shall be served upon the adverse party within ten days after the receipt thereof by the party to whom it was delivered and the original transcript and assignments, with proof of service thereof, shall forthwith be filed in the office of the clerk of the court. * * *" SDC 33.0737 provides: "Failure to order, serve, and file a transcript within the time fixed by these rules shall constitute a waiver of the right to such a transcript and the record shall be settled without it as hereinafter provided." The transcript was received from the reporter by R. M. Sheild, one of the attorneys for appellants, on October 1, 1949, and was served on contestants' attorney by mail on October 11, 1949. The service was therefore made "within ten days after the receipt thereof" by Sheild. The motion to strike the transcript and the assignments of error from the settled record is denied.
Claimant also calls attention to the fact that notice of filing the transcript was not given. Such notice is required by SDC 33.0706 when there is more than one respondent, *212 and the transcript with assignments of error are then filed with copies thereof in the clerk's office instead of being served. In this case the attorneys for the estate signed a stipulation, filed October 11, 1949, which amounts to a waiver of notice of filing, and the transcript was served upon the attorneys for claimant. This procedure appears to have been proper under the circumstances.
Judgment reversed.
RUDOLPH, J., concurs.
HAYES, P. J., and ROBERTS and SMITH, JJ., concur in result.